## W. E. McCoy *v.* E. G. Bevels, Admr. *et al.**

### (*Nashville.* December Term, 1926.)

Opinion filed, April 9, 1927.

1. **EXECUTION (OF MAGISTRATE). Levy. Condemnation in circuit court. Laches or abandonment.**

The lien acquired upon an execution issued by a magistrate, and levy upon land, returned seasonably to the circuit court for condemnation may be lost by laches, indulgences to debtor, or by any improper interferences, on part of the person secured; for liens of this character are **strictissimi juris,** and a deviation from the method of procedure sanctioned by the law destroy such lien as against innocent third parties. (Post, p. 316-317.)

Citing: Hammock v. Qualls, 139 Tenn., 388; Daly v. Perry & Shelton, 9 Yerger (17 Tenn.), 442; Conway v. Jett, 3 Yerger (11 Tenn.), 484; Freeman on Executions section 206.

2. **SAME. Same. Undivided interest of heirs.**

An undivided interest of an heir at law, subject to the debts of the ancestor, may be sold under execution. (Post, p. 319.)

Citing: Noble v. Nettles, 3 Rob. (La.), 152; Deamond v. Courtney, 12 La. Ann., 251; Hyde v. Barney, 17 Vt., 280, 44 Am. Dec., 335; Douglass v. Massie, 16 Ohio, 271, 47 Am. Dec., 375; Note 23, L. R. A., p. 643; Brett v. Williamson, 80 Tenn. (12 Lea), 649; 23 C. J. 361.

---

*On the general rule as to whether interest of heir in ancestor's estate is subject to execution, see annotation in 23 L. R. A., 643; 9 R. C. L., 127.

---

*Headnotes 1. Executors and Administrators, 24 C. J., section 1731; 2. Executors and Administrators, 24 C. J., section 1731; 3. Courts, 15 C. J., section 581; 4. Executions, 23 C. J., section 113; 5. Judgments, 34 C. J., section 1475 (Anno); 6. Lis Pendens, 38 C. J., section 67.

FROM LINCOLN.

Appeal from the Chancery Court of Lincoln County.
—HON. THOS. B. LYTLE, Chancellor.

LAMB & LAMB, for McCoy.

ROUTT & MYERS, for Bevels.

MR. CHIEF JUSTICE GREEN delivered the opinion of the
Court.

J. M. Harrison was one of the children and heirs of
O. G. Harrison who died intestate in Lincoln county,
May 10, 1924, leaving no widow. The deceased was the
owner of certain unincumbered real estate at the time of
his death.

Prior to the death of O. G. Harrison, Jean and other
creditors of J. M. Harrison had obtained judgments
against the latter which had not been satisfied. On May
9, 1924, the day before O. G. Harrison died, executions
were issued upon all of the judgments against J. M. Har-
rison, and the executions were levied upon the undivided
interest of J. M. Harrison in the land of which his father,
O. G. Harrison died seized and possessed—these levies
being made May 10, 1924, after the death of the father
and later in the day.

The papers in the Magistrate's cases in which Jean
and others had obtained judgments against J. M. Harri-
son and the aforesaid levies had been made were filed
with the circuit court clerk of Lincoln county, May 30,
1924, prior to the June Term of that court, and these

cases were regularly on the docket of said Circuit Court for orders of condemnation at its June Term, 1924.

On May 31, 1924, E. G. Bevels was appointed and qualified as Administrator of the estate of O. G. Harrison. On the same day he suggested the insolvency of said estate in the County Court of Lincoln County and appropriate proceedings were had and publication for creditors duly made.

The June Term of the Circuit Court of Lincoln County was adjourned until August, 1924, and at that time orders of condemnation were asked from the Circuit Court to sell the interest of J. M. Harrison in the land left by his father, in satisfaction of the executions against said J. M. Harrison. Counsel for the Administrator of O. G. Harrison represented to the circuit judge that the insolvency of the estate of said O. G. Harrison had been adjudged in the County Court and that the land would be sold under the orders of that court. He suggested that "to save the expense of a separate sale of the interest of J. M. Harrison under the orders of the Circuit Court, that it be agreed that the sale in the County Court be had and the debts of O. G. Harrison paid and the net share of the proceeds belonging to J. M. Harrison be applied to the payment of the judgments against him." This agreement seems to have been made in open court upon the understanding that such liens as the judgment creditors of J. M. Harrison had against his interest in the land left by his father should follow the proceeds of the sale.

On June 6, 1924, J. M. Harrison conveyed to H. E. Sherrell his undivided interest in the land left by his father to secure a note for $350 and said Sherrell transferred this note to the complainant McCoy. McCoy recovered judgment on the note April 4, 1925, and an exe-

cution was issued on said judgment April 7, 1925, which was returned *nulla bona.* The mortgage to secure said note was recorded in the register's office at Fayetteville. The bill herein was filed by McCoy to subject the net proceeds of the sale of the land of O. G. Harrison, going to J. M. Harrison as an heir, to the satisfaction of the McCoy judgment and mortgage. Jean and others denied the right of McCoy to this relief and the question presented is which has the prior claim on the proceeds of the sale of the lands of O. G. Harrison going to J. M. Harrison as an heir of his father. Said lands having been sold under the orders of the County Court. The Chancellor decided in favor of McCoy and we think he was correct.

No proof was taken in this cause, the case being submitted on the pleadings and exhibits. The case has been presented as though Sherrell, when he took his mortgage, had no actual notice of the judgments against J. M. Harrison, and we assume that fact was conceded before the Chancellor. McCoy was not a party to the agreement had in the Circuit Court between the Administrator and Jean and others whereby the application for orders of condemnation was abandoned or postponed. McCoy was not, therefore, bound by any agreement made in the Circuit Court.

In *Hammock* v. *Qualls,* 139 Tenn., 388, it was said that in all cases subject to our registration laws the deed first registered has priority over the constructive notice by *lis pendens.* It was held that the levy of an execution upon real estate did not transfer any title to the land nor create any interest in the Sheriff, but merely fixed a lien upon the land for the payment of the debt. It was declared that while the record of condemnation in the Circuit Court after levy of execution on a Magistrate's judg-

ment was constructive notice of the Sheriff's sale, the order of condemnation was not a judgment establishing a lien, but only a mode of executing a levy; that the record of condemnation in the circuit court merely continued the lien and the levy of the execution; that a creditor could not use an execution as security for his debt by a levy on property which created merely a secret lien. It was further said that reasonable diligence was required of the purchaser at an execution sale in perfecting his title, that if said purchaser negligently failed to procure a Sheriff's deed and record it, his title would be defeated by one who bought the land in good faith from the judgment debtor without notice of the title claimed by the execution purchaser. Our earlier cases were reviewed and it was repeated that one relying on *lis pendens* must understand that his claim was *strictissimi juris,* and that he must proceed with reasonable diligence.

In the case before us there was no attempt to go on to an order of condemnation by Jean and others, but proceedings in the Circuit Court were abandoned or suspended by them upon the faith of an agreement which they had with the Administrator of O. G. Harrison. As before mentioned, McCoy was no party to this agreement, and his rights could not be affected thereby. Instead of obtaining orders of condemnation from the Circuit Court and proceedings to enforce their liens upon the interest of J. M. Harrison in the lands left by his father, Jean and others entered into the arrangement with the Administrator set out above. Under the authorities, we think such creditors lost their lien as against McCoy.

" 'The only proper use of an execution' said the court in *Mann* v. *Roberts,* supra, 'is to enforce the collection of a debt, and to enforce it, so far as the rights of third persons are concerned, with reasonable diligence. The

creditor cannot use it merely as a *security* for his debt by a levy on property, for the lien thus created is a secret lien, and may operate to the prejudice of innocent third persons if the debtor be left in possession of the property.' This we conceive to be an accurate statement of the nature and purpose of an execution upon a justice's judgment when levied upon real estate.'' *Hammock* v. *Qualls,* supra.

"The execution in favor of F. and P. Shelton bears a test of a term older than that of Thomas P. Shelton, and therefore created a superior lien, in addition to which it had been actually levied on the property in dispute, and had they permitted it to have been executed, must have held it. But this they did not do, but on the contrary, on the 11th day of October, 1834, they made an arrangement by which their execution and the property on which it had been levied was conveyed by Mason Upshaw to the plaintiff in trust to secure the payment of the debt for which the execution had been issued. By this transaction the lien acquired by the execution and levy was lost, for liens of this character are *strictissimi juris,* and which may be readily lost by any improper interference on the part of the person to whom they are secured.'' *Daly* v. *Perry & Shelton,* 9 Yerger, 442.

"The lien the plaintiff acquires by the levy of his execution may be lost, if he be guilty of gross laches in not having the property sold in reasonable time, or if he release the property and give time to the defendant; and it may be that when the execution is enjoined, and security taken for the debt, the property levied on would be released. In the first two mentioned cases it would be unreasonable to say that a party should still retain his lien and thus exclude all other execution creditors from

having an opportunity of making their demands." *Conway* v. *Jett,* 3 Yer., 484.

"Whenever, by the plaintiff's order, or by agreement between him and the defendant, the execution of the writ is suspended by directions not to levy, or, after levy, by directions not to sell, whether such directions be permanent in their nature, or desiring to operate only until further orders are given, then, according to a decided preponderance of the authorities, the lien is also suspended and the execution becomes dormant." Freeman on Executions, section 206.

There would have been no difficulty about Jean and others procuring orders of condemnation in the Circuit Court to sell the interest of J. M. Harrison in the land. This is true although the insolvency of the father's estate had been suggested and a sale of all interests in the land by the County Court was imminent. The sale in the Circuit Court would have been of J. M. Harrison's interest only. The purchaser would have stood in the shoes of J. M. Harrison and have been entitled to the net amount going to J. M. Harrison as an heir, out of the proceeds of the County Court sale, after the debts of O. G. Harrison had been paid.

There is no doubt but that such an interest of an heir is subject to execution.

"The estate of an heir is an undivided interest in each and every tract of land owned by the ancestor at the time of his death. Subject to the debts of the ancestor, it may be levied upon by execution or attachment, and sold as the property of the heir." 23 C. J., 361.

It has been held in many cases that the undivided share of an heir in his ancestor's estate might be seized and sold under execution. *Noble* v. *Nettles,* 3 Rob. (La.), 152; *Dearmond* v. *Courtney,* 12 La. Ann., 251; *Hyde* v. *Bar-*

*ney,* 17 Vt., 280, 44 Am. Dec., 335; *Douglass* v. *Massie,* 16 Ohio, 271, 47 Am. Dec., 375, and other cases cited in Note 23 L. R. A., p. 643.

In *Brett* v. *Williamson,* 80 Tenn. (12 Lea), 649, the testator directed that, at the death or marriage of his wife, his plantation be sold and the proceeds divided among his sons, T. E. and P. K. and grandson, J. M. Prior to the widow's death, a creditor of P. K. obtained a judgment against him and levied on and sold P. K.'s undivided one-third interest in the land. It was held that the purchaser at the execution sale got a good title to P. K.'s interest, that said interest was subject to execution, and, when the land as a whole was sold after the widow's death in other proceedings, the purchaser of P. K.'s interest at the execution sale was entitled to P. K.'s share of the proceeds of the sale of the whole land.

In accord with the authorities from other States just above cited, this court said:

"But if the legal title to the land, not being vested in the executor, descended to the heirs, the legal title to one-third vested in P. K. as was the beneficial interest to the same extent, and such an interest would be subject to execution sale." *Brett* v. *Williamson,* supra.

There has been some discussion in the case as to the jurisdiction of the county judge to pass on a controversy which arose between the Administrator and Jean and others. The Administrator asserted that J. M. Harrison was indebted to his father's estate and that he (the Administrator) was entitled to offset this indebtedness against the share of J. M. Harrison in the estate, before such share could be subjected to the judgments of Jean and others. The county judge decided against the Administrator and adjudged that Jean and others had a prior lien on the interest of J. M. Harrison in his father's

land. We do not see how such proceedings could possibly affect McCoy's rights. He was not a creditor of O. G. Harrison and not before the county court in any way.

While the case for Jean and others had been strongly presented, we think the Chancellor's decree was in harmony with previous decisions of this court. These creditors did not go straight ahead with the enforcement of their lien. They undertook to use their executions as a security and obtain satisfaction of these executions through an agreement with the Administrator. The rights of those claiming a *lis pendens* lien being *strictissimi juris,* a deviation from the method of procedure sanctioned by the law will destroy such a lien as against innocent third parties.

The decree below will be affirmed.